

eeplaw.com
80 Pine Street, 38th Floor
New York, New York 10005
T. 212.532.1116 F. 212.532.1176

New Jersey Office
576 Main Street, Suite C
Chatham, New Jersey 07928

March 31, 2021

<u>BY ECF</u>
Honorable Steven Tiscione
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

  Re: *Suriel v. PANYNJ, et al.*, 19 CV 3867 (PKC) (ST)

Your Honor:

  I represent plaintiff in the above-referenced matter. I write jointly with defendants pursuant to the Court's order dated March 1, 2021 to respectfully provide a status report on the progress of discovery and to raise discovery disputes that the parties have been unable to resolve.

<u>Status of Discovery</u>

  The parties have selected dates for all depositions and the inspection of the airport to occur in advance of the deadline on May 7, 2021, with the exception of plaintiff's continued deposition, which is the subject of a dispute regarding length and scope as described below.

<u>Plaintiff's Position</u>

  1. <u>Plaintiff's Continued Deposition</u>

  If it should please the Court, plaintiff appeared for a deposition pursuant to notice at 10:00 a.m. on November 18, 2020. Defendants were late to begin the examination and it did not conclude until 7:10 p.m. Subtracting breaks and interruptions reflected in the transcript as required under the case law, defendants thus "questioned" plaintiff for seven hours and fifty-eight minutes, exceeding the presumptive seven-hour limit imposed by Fed. R. Civ. P. 30(d)(1). *See, e.g., Williams v. Fire Sprinkler Assocs. Inc.,* 15 CV 3147 (ADS) (AKT), 2017 WL 1156012, *2

(E.D.N.Y. Mar. 27, 2017). In exhaustive and repetitive fashion, defense counsel focused the questioning on irrelevant topics far afield of plaintiff's arrest and assault at JFK Airport on August 6, 2018 and resultant damages.[1]

For example, defense counsel spent approximately three hours questioning Mr. Suriel about his work as a musician, barber, cook and taxi driver during the period 1992-2016, including the accountants and tax preparers he used during that period. *See* Exhibit 1, pp. 23-61. Many of the questions were patently irrelevant. *See, e.g., id.* at p. 46, ln. 9 (Q: Did you have any training to cut hair?). Now, having squandered their time with Mr. Suriel and unable to articulate good cause as required, defendants insist plaintiff appear for an additional five hours of questioning with no limitations on scope. *See Saeed v. Count of Nassau*, 09 CV 3314 DRH AKT, 2011 WL 6945755, at *1 (E.D.N.Y. May 23, 2011) ("The party seeking to extend the time permitted under Rule 30 must provide good cause to justify an enlargement.")

Accordingly, Mr. Suriel, who is reluctantly willing to appear for limited additional questioning to facilitate factfinding notwithstanding defendants' conduct, respectfully requests that defendants be limited to, at most, 90 minutes of further questioning solely on the issue of damages. *See Margel v. E. G.L. Gem Lab Ltd.*, 04 CV 1514, 2008 WL 2224288, at *8 (S.D.N.Y. May 29, 2008) (finding relevant to the inquiry of good cause is whether the witness needs to be examined concerning a large number of documents, "whether the time previously afforded for the deposition was used efficiently and whether there are additional relevant areas of inquiry").

2. Dispute Regarding Defendants' Document Requests

Defendants seek to compel plaintiff to produce seven categories of documents:

1. All motor vehicles and licenses registered to plaintiff on 8/6/18.
2. Documentation of how VIA paid plaintiff.
3. List of accountants and insurance brokers from 2013-2018.
4. A copy of plaintiff's green card.
5. A copy of plaintiff's passport.
6. A copy of Plaintiff's Honda Odyssey vehicle registration.
7. Plaintiff's "cell phone records" from the date of the incident.

---

[1] The transcript of plaintiff's deposition is annexed hereto as Exhibit 1 for the Court's review.

As plaintiff has explained to defendants, these requests are largely incomprehensible and seek irrelevant information beyond the scope of Rule 26. With respect to the requests for plaintiff's passport and green card, the requests appear calculated to harass and intimidate plaintiff; plaintiff's immigration status and possession of a passport have no arguable connection to issues in dispute. *See Centro De La Comunidad Hispana De Locust Valley v. Town of Oyster Bay*, 954 F. Supp. 2d 127, 144 n.8 (E.D.N.Y. 2013), *aff'd*, 868 F.3d 104 (2d Cir. 2017), and *aff'd*, 705 F. App'x 10 (2d Cir. 2017) ("[T]he Court notes that in cases involving plaintiffs whom defendants suspect to be undocumented aliens, courts often issue protective orders to protect plaintiffs from intimidation or harassment and the chilling effect that discovery of immigration status could have on potential plaintiffs, often referred to as an *in terrorem* effect.") (collecting cases).

Likewise, the vehicle plaintiff was driving on the date of his arrest and its registration status are not in dispute; defendants have been unable to articulate the relevance of these requests. Nor is there any dispute that plaintiff was working for the rideshare service Via on the date of the incident. *See Sibley v. Choice Hotels Int'l*, No. CV 14-634, 2015 WL 9413101, at *2 (E.D.N.Y. Dec. 22, 2015) ("[T]he current version of Rule 26 defines permissible discovery to consist of information that is, in addition to being relevant 'to any party's claim or defense,' also 'proportional to the needs of the case.'") (internal citation omitted).

With respect to his tax matters, plaintiff, who is asserting a lost wages claim, was questioned extensively regarding his tax filings at his deposition and has agreed to provide five years of returns to the extent they are in his possession. There is no conceivable relevance to the identity of his tax preparers, which will, in any event, likely be reflected on the returns.

There is also no arguable relevance to plaintiff's "cell phone records." First, documents previously produced by plaintiff establish that plaintiff was working for Via and was dispatched to retrieve a passenger at Terminal 8 prior to his arrest at that location. Any further information regarding his assignment would be in the possession of Via, not plaintiff. Defendants' effort to obtain plaintiff's phone records, which in any event will not reflect the content of any communications, is a fishing expedition intended to uncover impeachment evidence.

Accordingly, plaintiff respectfully requests that the Court issue a protective order to relieve plaintiff of the obligation to provide the documents listed above.

3. Loc. Civ. R. 37.3 Request Regarding Defendants' Communications

By Rule 34 request dated December 16, 2020, plaintiff sought: "Records reflecting telephone calls and electronic communications between Officers Samuel and Telesford on August 6, 2018. *See* Samuel Deposition, p. 97, ln. 14-18."

Defendants responded on January 15, 2021 as follows:

> Objection. This demand is overly broad as it is not limited in time or scope, unduly burdensome, ambiguous, and calls for the production of documents that are irrelevant or not reasonably calculated to lead to the discovery of admissible evidence. In addition, all radio transmissions relating to Plaintiff's arrest were previously provided on December 15, 2020, Bates stamped as PA 1416 – PA 1418. Notwithstanding said objections and without waiver thereto, Defendants will provide an authorization for Plaintiff to obtain the cellphone records for the work phone used by Police Officer Andrew Samuel from the hours of 4:30pm to 6:00pm on August 6, 2018 under separate cover.

*See* Discovery Responses, annexed hereto as Exhibit 2. As of this writing, and despite their response in January, defendants have not provided any authorizations or documents responsive to this request. As indicated, plaintiff's request was based on defendant Samuel's deposition testimony and any messages transmitted by the defendant officers related to plaintiff are discoverable. Accordingly, plaintiff respectfully requests that defendants be compelled to search for responsive records and produce them by a date certain.[2]

---

[2] Plaintiff respectfully notes that defendants' position below is inaccurate. Defense counsel has been aware from the outset that plaintiff sustained serious injuries in the incident and that those injuries, which required surgery, have prevented plaintiff from working. Although defendants neglected to ever serve an interrogatory or otherwise inquire about the quantum of plaintiff's lost wages, defense counsel's questioning at plaintiff's deposition makes clear that the defendants have always considered lost earnings a component of plaintiff's damages as reflected in the exchanged medical records. *See* Exhibit 1 at, *e.g.*, pp. 41-42, 54, 56, 58, 79-81. It is also telling that, despite their claim that plaintiff sprung a lost earnings claim on them today, defendants somehow served demands regarding plaintiff's accountants several months ago which they seek to justify below as only relevant to plaintiff's "claims for lost earnings." With respect to defendants' request to extend expert discovery, defendants have failed to confer with plaintiff regarding this request and appear to misunderstand

Defendants' Position

Defendants, The Port Authority of New York and New Jersey, Officer Andrew Samuel, Officer Jeremy Kahn, Sgt. Joseph Opromalla and Officer Brett Telesford respectfully request the Court's assistance on the discovery issues outlined below which we have been unable to resolve with Plaintiff. We have had a "meet and confer" yesterday and today and were able to agree on dates for the non-party depositions of Jamaica EMT Mathew Lindstadt, an American Airlines representative, Defendant Officer Brett Telesford, as well as a date for the D&I of the American Airlines cameras. This is an action for false arrest and excessive force arising out of Plaintiff's arrest at JFK on August 6, 2018 for unlawful solicitation of a taxi fare.

This morning, Defendants learned for the first time that Plaintiff is claiming that he lost income as a result of his arrest and that he is now claiming he is totally disabled from working for life. In response to the Defendants' interrogatory number 16 concerning damages, Plaintiff merely referred to his Rule 26. However, Plaintiff only asserted compensatory and punitive damages in his Rule 26 and has neglected to supplement this response. A copy of Plaintiff's interrogatory responses is attached hereto as Exhibit A and the Plaintiff's Rule 26 is attached as Exhibit B. Because of the nature of this new claim, Defendants will be seeking a medical exam and a medical expert evaluation. Since expert reports are due on April 1, Defendants are requesting a 90-day extension to complete Plaintiff's deposition as discussed below and to arrange for an IME following the completion of the deposition.

Plaintiff's deposition was commenced via remote means on November 20, 2021 and including breaks it went for 7 hours and 40 minutes, but Defendants were unable to get further in their inquiry past when Plaintiff was in the cell at JFK being seen by EMTs. It is consistent with Rule 26 (b) (2) for a court to allow more than 7 hours for deposition if needed for the examination or if the deponent impedes or delays the deposition. *See Calderon v. Symeon,* 2007 WL 73577381 (D. Conn. February 2, 2007). Moreover, when "an interpreter [i]s needed to translate both the questions and the answers during the plaintiff's deposition, more than the usual amount of time for a deposition [is] warranted." *See Shu Jin v. Pacific Buffett House, Inc.*, 2007 WL 4730942, *1 (E.D.N.Y. May 17, 2007). Here, the deposition was conducted through a Spanish interpreter and Plaintiff's counsel demanded that all colloquies be interpreted in addition to all questions and answers. This caused extensive delays and the witness had trouble understanding questions which had to be repeated multiple times. Defendants' have requested an additional five hours to cover such issues as Plaintiff's transfer to Central Booking and his court appearance, as well as all aspects of damages. None of these topics were covered on November 20, 2021. Defendants are five individuals and if each had his/its own attorney they each would be allowed time to question. *See Carmody v. Village of Rockville Centre*, 2007 WL 2177064, *2 (E.D.N.Y. July 27, 2007) (noting where a case has

---

the schedule. Had defendants conferred with plaintiff, he would have referred them to docket entry 46, which is a scheduling order whereby the Court extended expert discovery to June 22, 2021.

multiple defendants it may "warrant additional time" to depose a plaintiff). Defendants will be severely prejudiced if they are not able to complete Plaintiff's deposition which they propose should also be video recorded. For the Court's convenience, Defendants refer to Plaintiff's Exhibit 1 for all references to Plaintiff's deposition transcript *supra*.

Defendants have requested from Plaintiff an authorization for his cell phone records from 8/6/18 on 7/29/20; 9/14/20; and 11/20/20 to which Plaintiff has objected each time. The contents of Plaintiff's cell phone records are highly relevant and material to the specific facts of the case as Plaintiff was working for VIA and using the app on his cell phone while working to orchestrate picking up and dropping off passengers from different locations. Plaintiff testified that he communicated with Via by means of texts on his personal cell phone. *See* Plaintiff's Deposition (pp.62-64, 68-69). Plaintiff claims he was picking up a passenger though Via at the time of his arrest. The Defendant police officer Andrew Samuel overheard Plaintiff soliciting for passengers. Defendants are therefore seeking an authorization for his cell phone records for 8/6/18 from noon until midnight.

Defendants are requesting not only plaintiffs' tax returns, (plaintiff has agreed to provide the requested tax returns) but the name and address of his accountant and broker. Plaintiff testified that his work driving a livery cab was all cash and the accountant prepared his tax return, and he has no other records of his earnings. The broker is thus relevant to the cost of his doing business on his claim for lost income. *See* Plaintiff's Deposition (pp. 34-37). Plaintiff objects to providing this information.

Defendants have requested copies of all licenses, including his Taxi & Limousine license, driver's license and registration for all vehicles owned at the time of his arrest. This is relevant as to Plaintiff's business and the frequency with which he was at JFK. Defendants can determine if any of the vehicles had prior tickets or used the parking lots. Plaintiff was asked but was unable to answer how often he went to JFK. *See* Plaintiff's Deposition (pp. 27-28)

Defendants also are in dispute with Plaintiff for the following discovery, which Defendants' contend are all relevant and material for Plaintiff's lost wages claim: documentation of how VIA paid plaintiff; a copy of Plaintiff's green card (to determine if Plaintiff is eligible to earn money working in the U.S.); a copy of Plaintiff's passport (to determine how often Plaintiff was actually in the U.S. and working); and a copy of Plaintiff's Honda Odyssey vehicle registration (to determine if there were any past accidents or tickets associated with the vehicle he was driving that day). It is generally accepted that in the context of discovery, relevance is an extremely broad concept. *See Melendez v. Greiner*, 2003 WL 22434101, at *1 (S.D.N.Y. October 23, 2003); *Zanowic v. Reno,* 2000WL 1376251, at *2 (S.D.N.Y. Sept. 25, 2000). Defendants discovery requests are therefore all relevant to Plaintiff's claims for lost earnings, his claimed reason for being at JFK at the passenger pick-up, and the defenses to those claims.

Thank you for your consideration of this request.

Respectfully submitted,

Gabriel P. Harvis

cc: Defense Counsel