UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| FRANCISCO SURIEL,<br><br>                      Plaintiff,<br><br>-against-<br><br>PORT AUTHORITY OF NEW YORK AND NEW JERSEY, et al.,<br><br>                      Defendants. | PLAINTIFF'S LOCAL CIVIL RULE 56.1 STATEMENT<br><br>19 CV 3867 (PKC) (ST) |

    Pursuant to Rule 56.1 of the Local Civil Rules of this Court, plaintiff respectfully submits the following statement of material facts to which plaintiff asserts there is no genuine issue to be tried:

*Fabrication of evidence*

1. **On August 6, 2018 (the date of plaintiff's arrest), defendant Police Officer Andrew Samuel (plaintiff's arresting officer) observed plaintiff, a rideshare driver working for Via, ask an unidentified Caucasian woman if she needed ground transportation at the passenger pick-up roadway outside the Arrivals area of Terminal 8 at JFK Airport.**[1] Deposition Testimony of Andrew Samuel, November 20, 2020 ("Samuel Dep."),[2] p.84, ln. 2-10, p. 86, ln. 18-25; p. 249, ln. 5-p. 250, ln. 6; p. 253, ln. 6-p. 254, ln. 14.

---

[1] Plaintiff adopts the facts set forth herein only for purposes of his motion for partial summary judgment and reserves the right to present different and/or conflicting facts at any trial in this matter. *See Vasconcellos v. City of New York*, 12 CV 8445 (CM) (HBP), 2015 U.S. Dist. LEXIS 121572, *4 (S.D.N.Y. Sept. 9, 2015) (Local Civil Rule 56.1 "means a party can 'admit' facts that it intends to dispute at trial without suffering any prejudice – the 'admission'…neither binds the party going forward if the motion is denied nor can it be admitted in evidence at trial.").

[2] If it should please the Court, plaintiff understood the Court's order of April 7, 2022 to require the parties to file 56.1 statements, but not supporting declarations or exhibits.

2. **Defendant Samuel did not observe plaintiff speak to anyone else before arresting him for engaging in Unlawful Solicitation of Ground Transportation in violation of V.T.L. § 1220-B.**[3] *Id.* at pp. 105-106.

3. **While plaintiff was in custody, during a telephone conversation at approximately 11:30 a.m. on August 7, 2018 (the day after plaintiff's arrest), defendant Samuel informed an employee of the Queens County District Attorney's office that he had observed Mr. Suriel ask "*multiple arriving passengers*" if they needed ground transportation.** *Id.* at p. 249, ln. 5-p. 250, ln. 6; p. 253, ln. 6-p. 254, ln. 14.

4. **Based on the information defendant Samuel provided, Queens County prosecutors prepared a criminal complaint falsely stating that Samuel had "observed" plaintiff "offer ground transportation to *multiple* arriving airline passengers…" (emphasis added). The criminal complaint further alleged that "…[plaintiff] asked *several arriving passengers* if *they* needed a taxi and said *passengers* did not accept the offer." (emphasis added).** *Id.*; *see* Criminal Complaint.

5. **While plaintiff was in custody, defendant Samuel reviewed and executed the criminal complaint without offering any corrections and knowing that his allegations were subject to the penalty of perjury and that the pleading would be used to initiate a criminal prosecution against plaintiff for the conduct alleged.** *Id.; see also* Samuel Dep. at 258, ln. 8-18.

6. **Thereafter, and after having been deprived of his liberty for the better part of a day, plaintiff was arraigned on the criminal complaint filed by defendant Samuel and released on his own recognizance.** *Id.*

7. **Plaintiff was compelled to attend four court appearances after his arraignment under the threat of the issuance of an arrest warrant; on February 20, 2019, the criminal charges were adjourned in contemplation of dismissal and later dismissed.** *See* Court Action Sheet; Certificate of Disposition.

*Spoliation Sanctions*

8. **At the time of plaintiff's arrest on August 6, 2018 at approximately 5:25 p.m., multiple video surveillance cameras installed at and around JFK Terminal 8 were positioned to have potentially captured some or all of the disputed events, including defendants' use of force.** Deposition Testimony of Bob Davis ("Davis

---

[3] Since this incident took place, police officers at JFK Airport are no longer permitted to make arrests for alleged violations of VTL § 1220-B. Samuel Dep., p. 115, ln. 12-15.

Dep."), pp. 7-10, 25-26; Fed. R. Civ. P. 30(b)(6) Deposition Testimony of Kim Dickie ("Dickie Dep."), pp. 18-19; Photos taken by counsel at site inspection; Screenshots taken by Kim Dickie.

9. **A Fed. R. Civ. P. 34 site inspection revealed cameras affixed to a parking structure adjacent to JFK Terminal 8 that could have had line of sight to the location of plaintiff's arrest on the Arrivals roadway. These cameras were not disclosed by the Port Authority's Fed. R. Civ. P. 30(b)(6) witness.** Dickie Dep., pp. 15-16, 25-26; Annotated Site Inspection Photos; Declaration of Gabriel P. Harvis.

10. **Some of the surveillance cameras in and around JFK Terminal 8 were operated by Port Authority and some were operated by American Airlines, a tenant of the Port Authority.** Dickie Dep., pp. 32-38; Davis Dep., p. 25.

11. **A well-established process existed for Port Authority to review and obtain video footage from American Airlines as needed.** Davis Dep., p. 10-11; Dickie Dep. pp. 31-41.

12. **Both Port Authority and American Airlines had retention policies that deleted video footage after 30 days, although some Port Authority cameras maintained footage for up to 32 days.** Davis Dep., pp. 10-13; Dickie Dep., p. 10.

13. **By certified letter dated August 16, 2018 (ten days after plaintiff's arrest), plaintiff's counsel sent a preservation notice to the Port Authority specifically demanding that it preserve and retain,** *inter alia*, **all video surveillance footage at JFK Terminal 8 from 4:00-6:00 p.m. in anticipation of the instant litigation.** *See* Preservation Notice. **Receipt of this letter is conceded.** Defendants' 56.1 Statement (DE #86), ¶ 70.

14. **No employee of the Port Authority reviewed any camera footage from JFK Terminal 8 in response to plaintiff's request, nor did any Port Authority employee seek to obtain footage from American Airlines or notify American Airlines of plaintiff's timely preservation notice.** Dickie Dep., p. 47; Davis Dep., pp. 20-23.

15. **Port Authority never informed plaintiff or his counsel that its tenant American Airlines allegedly had control over some of the cameras subject to plaintiff's notice.** Declaration of Gabriel P. Harvis.

16. **As a result of Port Authority's conduct, any relevant footage of the disputed events was destroyed and is now lost to plaintiff and any civil jury hearing this action.** *Id.*

Dated: May 9, 2022
       Briarcliff Manor, New York

                            ELEFTERAKIS, ELEFTERAKIS & PANEK

                            _____
                            Gabriel P. Harvis
                            80 Pine Street, 38th Floor
                            New York, New York 10005
                            (212) 323-6880
                            gharvis@eeplaw.com

                            *Attorneys for plaintiff Francisco Suriel*