UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FRANCISCO SURIEL,

                                        Plaintiff,

            v.

THE PORT AUTHORITY OF NEW YORK AND
NEW JERSEY, PORT AUTHORITY POLICE
DEPARTMENT; Police Officer ANDREW
SAMUEL, Shield No. 3331; Police Officer JEREMY
KHAN; Sergeant JOSEPH OPROMALLA; JOHN
DOE, as Administrator of the Estate of ROBERT
JONES; Police Officer BRETT TELESFORD; JOHN
and JANE DOE 1-10,

                                        Defendants.

DOCKET NO.: 1:19-cv-3867 (PKC)(ST)


**DEFENDANTS' MEMO OF LAW IN SUPPORT OF THEIR MOTION
FOR PARTIAL SUMMARY JUDGMENT**

Kathleen Gill Miller, Esq.
Christopher  Valletta, Esq.
Attorneys for Defendants
4 World Trade Center, 24th Floor
New York, New York 10007
(212) 435-3434; (212) 435-3493

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS ......................................................................................1

  A)  The Parties .......................................................................................................1

  B)  VIA Operations And Ride Share Services At JFK ........................................3

  C)  The Arrest .......................................................................................................4

     i) events leading up to the arrest...................................................................4

     ii) the arrest events according to the police..................................................6

     iii) the arrest events according to plaintiff ..................................................7

     iv) the arrest processing and the EMTs ......................................................7

  D)  The Criminal Proceeding ...............................................................................9

ARGUMENT ...........................................................................................................9

  A.  The Standard For Summary Judgment ..........................................................9

POINT I .................................................................................................................10

    Plaintiff's Cause of Action for Unlawful Stop Should Be Dismissed

POINT II ................................................................................................................11

    The Claim For Malicious Abuse of Process Is Legally Deficient

POINT III...............................................................................................................12

    Plaintiff's Claim For Negligent Hiring Training And Retention Lacks The Requisite
    Factual Support

POINT IV...............................................................................................................13

    Plaintiff's Claim For Intentional Infliction of Emotional Distress Must Fail

POINT V ................................................................................................................14

    Plaintiff's Claim For Negligent Infliction Of Emotional Distress
    Should Be Dismissed

POINT VI..................................................................................................................15

      Plaintiff's Claim Of Failure To Intervene Cannot be Maintained Against Samuel And His
      Claim Of False Arrest Cannot Be Maintained Against Telesford

POINT VII ..............................................................................................................16

      Plaintiff's *Monell* Claim Lacks Any Evidentiary Support

POIINT VIII .............................................................................................................17

      The State Law Claims For Intentional Torts Against Telesford Are Time -Barred

POINT IX ...............................................................................................................17

      The Claim Against The Port Authority Police Department Does Not Lie


CONCLUSION.........................................................................................................18

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 243, 106 S. Ct. 2548, 91 L. Ed. 2d 202 (1986) ...............................9

*Ashcroft v. Iqbal,*
556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ...........................12

*Barreto v. Kotaj,*
46 Misc. 3d 47, 1 N.Y.S.3d 727 (Sup. Ct. App. Term, 1st Dept. 2014) ......................15

*Batista v. Rodriguez,*
702 F. 2d 393 (2d Cir. 1983) .......................................................16

*Bender v. City of New York,*
78 F. 3d 787 (2d Cir. 1996) ........................................................13

*Canton v. Harris,*
489 U.S. 378, 109 S. Ct 1197, 103 L. Ed . 2d 417 (1989) ...........................12

*Celotex Corp., v. Catrett,*
477 U.S. 317, 322-323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ...................9

*Chepilko v. City of New York,*
No. 06 civ 5491 (ARR) (LB), 2012 WL 398700 at *8 n.5 (E.D.N.Y. Feb. 6, 2012) ...................15

*Codero v. City of New York,*
282 F. Supp. 3d 549 (E.D.N.Y. 2017) ..............................................10

*Coggins v. County of Nassau,*
254 F. Supp. 3d 500, 519 (E.D.N.Y. 2017) ........................................11

*Colodney v. Continuum Health Partners, Inc.,*
No. 03 civ 7276 (DLC), 2004 WL 829158 at *8 (S.D.N.Y. April 15, 2004) ..............13

*Connick v. Thompson,*
563 U.S. 51, 131 S. Ct. 1350, 79 L. Ed. 2d 417 (2011) ............................12

*Cook v. Sheldon,*
41 F. 3d 73 (2d Cir. 1994) .........................................................11

*CT v. Valley Stream Union Free School District,*
201 F. Supp. 3d 307 (E.D.N.Y. 2016) ........................................................15

*Daluise v. Sottile,*
40 A.D. 3d 801,837 N.Y.S. 2d 175 (2d Dept. 2007) ................................15

*Dixon v. City of Syracuse,*
493 F. Supp. 3d 30 (N.D.N.Y. 2020) ...................................................10,16

*Doe v. City of New York,*
No. 18 civ 670 (ARR) (JO), 2018 WL 3824133 (E.D.N.Y. Aug. 9, 2018) ................................14

*Eckardt v. City of White Plains,*
87 A.D. 3d 1049, 930 N.Y.S. 2d 22 (2d Dept. 2011) ................................14

*Folk v. City of New York,*
243 F. Supp. 3d 363 (E.D.N.Y. 2017) .................................................11,12

*Green v. City of Mount Vernon,*
96 F. Supp. 3d 263 (S.D.N..Y. 2015) ...................................................... 15

*Howell v. N.Y. Post,*
81 N.Y. 2d 115, 596 N.Y.S. 2d 350, 612 N.E. 2d 699 (1993) ....................13

*Hulett v. City of Syracuse,*
253 F. Supp. 3d 462 (N.D.N.Y. 2017) ......................................................16

*Jackson v. City of New York,*
939 F. Supp. 2d 219 (E.D.N.Y. 2013) ......................................................15

*Jaramillo v. Weyerhaeuser,*
536 F. 3d 140 (2d Cir. 2008) ......................................................................9

*Lee v. McCue,*
410 F. Supp. 2d 221 (S.D.N.Y. 2006) ..................................................14,16

*Leonard v. Reinhardt,*
20 A.D. 3d 510, 799 N.Y.S. 2d 118 (2d Dept. 2005) ................................13

*Lignon v. City of New York,*
925 F. Supp. 2d 478 (S.D.N.Y. 2013) ......................................................10

*Lozada v. Weilminster,*
92 F. Supp. 3d 76 (E.D.N.Y. 2015) ..........................................................10

*Matthaus v. Hadjedj.*
148 A.D.3d 425, 49 N.Y.S.3d 393 (1st Dept. 2017) ...................................................13

*Matsushita Elec. Indus. Co., v. Zenith Radio.,*
475 U.S. 574,106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)..............................................9

*McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc.,*
256 A.D. 2d 269, 682 N.Y.S. 2d 67 (1st Dept. 1998) .................................................14

*Monell v. Department of Social Services,*
436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978) .............................................16

*O'Neill v. Krzeminski,*
839 F. 2d 9 (2d Cir. 1988) .........................................................................................15

*Pinter v. City of New York,*
976 F. Supp. 2d 539 (S.D.N.Y. 2013) .......................................................................10

*Reynolds v. Guiliani,*
506 F. 3d 183 (2d Cir. 2007) .....................................................................................12

*Rodriguez v. City of New York,*
___F. 3d ___, 16 civ 5861 (NG)  (RER),2022 WL 900613
(E.D.N.Y. Mar. 28, 2022) ......................................................................................12,13

*Rubio v. Country of Suffolk,*
No. 01 civ 1806 (TCP), 2007 WL 2993830  (E.D.N.Y. Oct. 9, 2007) .......................14

*Savino v. City of New York,*
331 F. 3d 63 (2d Cir. 2003) .......................................................................................11

*Sheila C v. Povich,*
11 A.D. 3d 120 , 781 N.Y.S. 2d 342 (1st Dept. 2004) ...............................................14

*Soliman v. City of New York,*
No. 15 civ 5310 (PKC) (RER), 2017 WL 1229730  (E.D.N.Y. Mar. 31, 2017) ...................14,17

*Sorlucco v. City of New York Police Dept.,*
971 F. 2d 864 (2d Cir 1992) ......................................................................................16

*Tchatat v. City of New York,*
No. 14 civ 2385 (LGS), 2015 WL 5091197  (S.D.N.Y. 2015) ...................................17

*Terry v. Ohio*,
392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968) ................................................10

*Theodat v. City of New York*,
818 Fed. Appx. 79 (2d Cir. 2020) ..............................................................................16

*Universal Calvary Church v. City of New York,*
No. 96 civ 4606 (RPP), 2000 WL 1745048  (S.D.N.Y. Nov. 28, 2000) ....................15

## STATUTES

N.Y. Unconsol. Laws. § 1645, § 6401 *et seq*...........................................................18

42 U.S.C. § 1983.......................................................................................................12

## RULES

 Fed. R. Civ. P. 56 ( c ) ................................................................................................1

## PRELIMINARY STATEMENT

Defendants, The Port Authority of New York and New Jersey (the "Port Authority"), The Port Authority Police Department ("PAPD"), Police Officer Andrew Samuel and Police Officer Brett Telesford submit this Memorandum of Law in support of their motion for partial summary judgment pursuant to Fed R. Civ. P. 56(c) dismissing the plaintiff, Francisco Suriel's ("Plaintiff") claims for: 1) Unlawful Stop (First Claim); 2) Malicious Abuse of Process (Seventh Claim); 3) Negligence/Negligent Hiring/Training/Retention (Eighth Claim); 4) Intentional Infliction of Emotional Distress (Ninth Claim); 5) Negligent Infliction of Emotional Distress (Tenth Claim); and 7) Failure to Intervene (Eleventh Claim). Defendants are also moving to dismiss Plaintiff's *Monell* claims against the Port Authority under its federal causes of action, and to dismiss all the intentional state tort claims against P.O. Telesford as time- barred.

## STATEMENT OF FACTS

### A) The Parties

Police Officer Andrew Samuel was employed by the PAPD for four years at the time of Plaintiff's arrest at John F. Kennedy International Airport ("JFK") on August 6, 2018 for Unlawful Solicitation of Ground Transportation at an Airport (VTL 1220 (b)). He was trained at the PAPD Academy (deposition of P.O. Samuel, dated 11/20/2020, ("Samuel tr.") pp. 9, 15,18,72,101, Ex. A to the Declaration of Kathleen Gill Miller dated July 26, 2022 ("Miller Decl."). Samuel was working the "hack" squad, which is a plain clothes detail to enforce the law against unlawful solicitation by taxi drivers, known as "hustlers" (Samuel tr. pp.18, 68). He had been trained 3-4 months for the "hack" unit (Samuel tr. p. 19). At the time of

Plaintiff's arrest, Samuel had made over 150 arrests and had worked plain clothes details over 100 times. (Samuel tr. p. 13).  He was familiar with ride share vehicles, which he said usually have an insignia, or the driver has proof on his phone (Samuel tr. p. 24). On August 6, Samuel was dressed in shorts and a t-shirt with his badge around his neck, inside his shirt, and he carried his gun and a radio (Samuel tr. pp. 32-34, 37). He is a black male, age 32, 6' 3" tall, weighing 250 lbs. (Samuel tr. p. 34; Samuel Self-identification Questionnaire, Ex. B to Miller Decl.).  He has never been sued prior to this lawsuit (Samuel tr. p. 15).  On August 6, 2018, he was working the 2-10 p.m. shift, and was assigned to work with P.O. Telesford (Samuel tr. p. 29-30, 48). They were assigned an unmarked vehicle to drive around the various terminals to patrol for taxi hustlers (Samuel tr. p. 32-34; Samuel's Memo Book for August 6, 2018, Ex. C to Miller Decl.)

Police Officer Brett Telesford had been employed by the PAPD one year prior to plaintiff's arrest, but he had been trained and worked for NYPD for a year before joining the PAPD (deposition of P.O. Telesford, dated April 30, 2021, pp. 10-11 ("Telesford tr."), Ex. D to Miller Decl.). On August 6, 2018, he was working plain clothes "hack", which is to combat "an unlawful taxi condition rampant at the airport." (Telesford tr. pp. 17, 19, ll. 5-6). When he works plain clothes he carries his shield on a chain around his neck under his shirt (Telesford tr. p. 21). He also carries firearm, handcuffs and a radio (Telesford tr. p. 20).  He was working the 2-10 p.m. shift on August 6 and was driving an unmarked rental car to the terminals at JFK with Samuel (Telesford  tr. pp. 17, 23, 27, 21). Telesford is a black male, then age 29, 6' 1" tall, weighing 230-240 lbs. (Samuel tr. p. 35;Telesford Tr. p. 69; Telesford's Academy Contact Information Form, Ex. E to Miller Decl.). He has never been sued before this lawsuit (Telesford tr. p 13).

Plaintiff, then age 51, was born in the Dominican Republic in 1967 and emigrated to the United States in 1992, while working as a musician (deposition of Francisco Suriel, dated November 18, 2020 pp.19-20 ("Suriel tr."), Ex. F to Miller Decl. He graduated from High School in the D.R. and studied English for 6 months when he came to the United States where he is now a permanent resident (Suriel tr. pp. 22,25).  He has worked in the U.S. as a musician, cook, construction worker/painter and as a taxi driver for private companies (Suriel tr. pp. 19-25).  Between 2000-2007 he worked for Elegant Car Service driving customers to the airports (Suriel tr. pp. 30-33).  In 2018, Plaintiff was driving a 2014 Honda Minivan as a taxi driver for UBER and then for Via (Suriel tr. pp. 26, 59, 62, 63).  Plaintiff is 5'7'' tall and weighs 150 lbs. (Suriel tr. p157).

**B) VIA Operations And Ride Share Services At JFK**

Rideshare services are permitted at JFK, but they are required to use designated pick-up areas at each of the Terminals (Samuel tr. p. 9).  On August 6, 2018, Suriel was working as an independent contractor with Flatiron  Inc., a subsidiary of Via, a ride sharing service, which operated through an app that both drivers and customers had on their cell phones (deposition of Stephen Kendall, director of driver operations at Via, dated April 22, 2021, pp. 8,11, 22 ("Kendall tr.), Ex. G to Miller Decl.).  Suriel entered into a contract to be a Via driver on January 26, 2018 (Flatiron contract, Bates No. Via 0001-0008, Ex H to Miller Decl.).  When a customer booked a ride through the Via mobile app, the customer  was given the make, model and license plate of the vehicle that will pick him/her up together with the first name and first initial of the last name of the driver (Kendall tr. pp. 25-26). The driver is given the exact time and location of the pick-up and some passenger information (Kendall tr. p. 36).

On August 6, 2018, Plaintiff was assigned a Via passenger pick-up at the Arrivals area of Terminal 8 (American Airlines) at JFK. Via records show the call for a pick-up was received at 16:46 (4:46 pm) with an assigned pick-up time of 16:56 (4:56 pm). The passenger had a 4-week commuter pass (Via records, Bates Nos. Via 0015-0016, Ex. I to Miller Decl.; Kendall tr. pp. 81-82, 101,103,110). When the driver arrives at the location of the pick-up, the Via app gives the driver the actual identity of the passenger (Kendall tr. pp. 27, 30). The passenger who calls Via for a ride was supposed to be ready for immediate pick-up (Kendall tr. p. 43). Once the driver arrives at the assigned pick-up location he/she has to wait 1-4 minutes before the passenger can be marked "no show" on the app. (Kendall tr. pp. 44, 47-48). Suriel was driving in Blue Mode that week and was being paid by hour so he was not supposed to cancel (Kendall tr. pp. 28, 33). Suriel testified that he would wait 5 minutes for a passenger and then cancel, or give the trip a negative (Suriel tr. p. 85). The pick-up assigned to Plaintiff was canceled by the passenger at 18:02 (6:02 pm) (tr. pp. 105, 120;Via record, Bates No. Via 00016, Ex. I to Miller Decl.).

**C) The Arrest**

**i) events leading up to the arrest**

Plaintiff testified that that while he was driving on the Belt Parkway, he received a notification on the Via app to pick up a woman at JFK at 2:20 p.m. (Suriel Tr. pp. 65-72) . He drove to the location of the pick-up at Terminal 8, American Airlines, and the passenger was not there (Suriel tr. pp. 101-106, 114). There were a number of people in the passenger pick-up area when he arrived (Suriel tr. p.110). He testified that he pulled into the pick-up area near the sign and he had a Via placard in the window (it has never been produced) (Suriel tr. pp.205-206, 221, 223). He has never before picked up a passenger at American Airlines Terminal 8 (Suriel tr. pp. 103-105). The police arrived three minutes after he arrived. ( Suriel tr. pp. 112).

Telesford testified that he was driving around the various air terminals with Samuel when they pulled into Terminal 8 (Telesford, tr. pp. 19 23, 27, 31, 45, 63). When they arrived at Terminal 8 they observed plaintiff's minivan in the middle roadway between the two passenger pick-up signs designating shared ride pick-up locations (Telesford tr. pp. 49-52, 61). He was not dropping anyone off or picking up any passengers (Telesford tr. p. 61). They observed him speaking through the open passenger window of his vehicle to a white/Hispanic female standing at the curb with her luggage (Telesford tr. pp. 59-60, 66-67). They continued to watch Plaintiff and the female, who was shaking her head "no" (Telesford tr. p. 71). After a few minutes, Plaintiff drove off. (Telesford tr. p. 72-23,75). The two officers recirculated back to the Arrivals area of Terminal 8, where they observed Plaintiff's vehicle in the same approximate location. (Telesford tr. pp. 75-76). The location was 50 to 60 feet from the designated rideshare area (Samuel tr. p 92). Neither officer saw a rideshare placard or Via insignia on Plaintiff's vehicle. (Telesford tr. p. 68; Samuel tr. pp. 80,130). The officers observed plaintiff speaking to the same woman (Telesford tr. p. 77; Samuel tr. p. 93). Samuel exited the vehicle and went to the curb, standing 2-3 feet from the woman. Samuel overheard plaintiff asking the woman: "Do you need a taxi?" (Samuel Tr. pp. 84, ll.9-10, 89). He overheard the woman tell plaintiff that she had a ride while shaking her head "no" (Samuel tr. pp. 89, 93). Samuel contacted Telesford and told him that he had a violator and asked him to assist him with the arrest. (Samuel tr. pp. 96-97). Telesford got out of his vehicle and approached the driver's side of Plaintiff's vehicle as Samuel approached the passenger side of Plaintiff's vehicle (Samuel tr. pp. 98-99) Plaintiff's vehicle was stopped when they approached (Samuel tr. p. 112).

### ii) the arrest events according to the police

Samuel took his shield out of his shirt and opened the passenger door to Plaintiff's vehicle while announcing he was a police officer, and that Plaintiff was under arrest (Samuel tr. pp. 99-100). Suriel responding by asking Samuel who he was and why he was under arrest (Samuel tr. p. 101). Samuel responded to Plaintiff that he was being arrested for unlawful solicitation, and Samuel asked him to step out of the vehicle. (Samuel tr. p. 101-104). Plaintiff responded that he wasn't doing anything; he did not mention working for Via (Samuel Tr. pp. 102-103). Plaintiff refused to step out of the vehicle (Samuel tr. pp. 108-109). Samuel instructed him to get out of the vehicle three times, but plaintiff refused gesturing that he would not comply (Samuel tr. pp. 110,113,116; Telesford tr. pp. 105-107).

Samuel then joined Telesford on the driver's side of the vehicle and they each placed their hands on Plaintiff's upper arms and lifted him out of the vehicle, while plaintiff attempted to pull away. (Samuel Tr. pp.113-116; Telesford tr. pp. 109-115). Once out of the vehicle, Plaintiff continue to resist Samuel's efforts to handcuff him by pulling his arm away while yelling in Spanish (Samuel tr. pp. 113-114,124-126; Telesford tr. pp. 113-119). Plaintiff did not have a taxi driver's identification, medallion, placard, or phone mounted on the dashboard indicating he was a professional driver (Samuel Tr, pp. 129-133). Samuel testified that Plaintiff was able to communicate with him in English during his arrest (Samuel Tr. pp. 138, 147). Uniformed officers arrived on the scene and Plaintiff became compliant and was transported to the Police Command, Building 269 at JFK by uniformed officers. (Samuel tr. pp. 118,124, 128). The time of arrest was 17:25 (5:25 p.m.) (Samuel tr. p. 220).

### iii) the arrest events according to plaintiff

Plaintiff testified that the police did not identify themselves or tell him to get out of the vehicle, but rather opened the door of his vehicle hit him in the chest with an elbow and threw him out of the car and beat him on the head (Suriel tr. 118-129, 132). Plaintiff yelled for help and dialed 911 (no 911 call appears on his cell phone records) (Suriel tr. p. 130). He was on his back in the road, an officer put a foot on his neck and then he was flipped over with his face (down on the roadway (Suriel tr. pp. 148-149). His nose and mouth were in the roadway and one of the officer's feet was on his back (Suriel tr. pp. 256-258). The officer who was on the driver's side elbowed him and hit him with his backpack (Suriel tr. pp. 226-228, 242). Both officers were wearing hooded sweatshirts. (Suriel tr. p. 240). People gathered around and were filming the incident while Plaintiff was on the ground (Suriel tr. pp. 170-172). A number of police officers were on the scene (Suriel tr. p. 261). Plaintiff's clothes were torn during his arrest (Suriel tr. p. 150). Plaintiff testified that he has scrapes and black and blue marks as a result of the police actions (Suriel tr. p. 179).

### iv) the arrest processing and the EMTs

Samuel, as the arresting officer, processed the arrest paperwork (Samuel tr. pp 143-147). The on-line booking system arrest sheet in the arrest file shows that Plaintiff was arrested at 17:25 ( 5:25 pm) at Terminal 8 and charged with *inter alia* Unlawful Solicitation of Ground Transportation (VTL 1220B) and resisting arrest (Arrest File Bates No. PA 00001-00023, Ex. J to Miller Decl.); on-line booking sheet, Bates No. 00006-00008). Samuel offered Plaintiff the opportunity to make a telephone call but he declined. (Samuel tr. p. 52). The cell Log shows that Plaintiff was placed in a cell at 17:39 (5:39 p.m.) and was transferred to Queens Central Booking at 23:26 (11:26 p.m.) (Arrest file, Cell Log Bates No. 00002). When he arrived at the police

command, Plaintiff requested EMS for high blood pressure (Samuel tr. p 169). Sgt. Opromalla made a request for EMTs from Jamaica Hospital to treat Plaintiff (deposition of Sgt. Joseph Opromalla, dated December 16, 2020, pp. 61-63) "(Opromalla tr"), Ex. K to Miller Decl.). The CAD report confirms that plaintiff was requesting EMTs for high blood pressure (CAD Report, Bates No. PA 00028, Ex. L to Miller Decl.). EMTs, Luz Sanchez and Mathew Lindstadt, from Jamaica Hospital treated plaintiff in his cell at JFK and prepared a Prehospital Care Summary Report.  Ms. Sanchez spoke Spanish to Plaintiff and the EMTs took plaintiff's vital signs and asked him questions on  the form about his physical condition (deposition of Luz Sanchez dated March 16, 2021 (tr. pp 30-36, 56-59, 79 (" Sanchez tr") Ex M to Miller Decl.; deposition of Mathew Lindstadt, dated July 2, 2021 pp. 21-30 (" Lindstadt tr"), Ex N to Miller Decl.).  The Pre-Hospital Care Summary Report states that Plaintiff reported no injuries and that he stated he was feeling calmer and he declined to go to the hospital (Jamaica Hospital Pre Care Summary Report, Ex. O to Miller Decl.). At the time of Plaintiff's arrest VTL 1220 (b) was a misdemeanor (Samuel tr. pp 234-237).  Thereafter, Plaintiff was transferred to Queens Central Booking where he was required to undergo a pre-arrignment screening by New York City FDNY EMTs before being transferred to the custody of NYPD (deposition of FDNY Lt. Grant Simmons, dated September 29, 2021 pp. 17-21, 29 ("Simmons tr."), Ex. P to Miller Decl.).  FDNY EMTs Richard Delmonico and Jennifer Aguilez evaluated Plaintiff and prepared a NYC Correctional Health  Services Pre-Arraignment Screening Form on August 7 , 2018 at 12:21 a.m. (Simmons Tr. p 22; NYC Correctional Health Services Pre-Arraignment Screening Form, Ex. Q to Miller Decl.). EMT Aguilez speaks Spanish and she filled out the form which states that Plaintiff said he was neither sick nor injured (deposition of Richard Delmonico, dated July 29, 2021, Ex R to Miller Decl.; Pre-arraignment  Screening Form).

Plaintiff was released by NYPD on August 7, 2018 at 6:00 p.m. (Suriel tr. p. 279).

**D) The Criminal Proceeding**

Plaintiff retained an attorney 10 days after his release (Suriel tr. pp. 150-151, 282). It is the same attorney as represents him in the civil action (Suriel tr. pp. 281-282). On August 16, 2018 Plaintiff's counsel sent a preservation letter to the Port Authority requesting video surveillance at Terminal 8.  On August 17, 2018, Plaintiff went to NYU Langone complaining of chest pain and leg pain and headaches (NYU Langone Medical Record dated August 17, 2018, Ex. S to Miller Decl.). The criminal charges against Plaintiff were Adjourned in Contemplation of Dismissal of February 20, 2019, Ex T to Miller Decl.).

## ARGUMENT

**A. The Standard For Summary Judgment**

"Summary judgment may be granted where there is no genuine issue as to any material fact and the moving party… is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 ( c ). The motion should be granted in there is no genuine issue of material fact to be tried. *Celotex Corp., v. Catrett*, 477 U.S. 317, 322-323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). While all ambiguities and factual inferences must be drawn in favor of the non-moving party, the non-moving party cannot defeat a motion for summary judgment by "simply show[ing] that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., v. Zenith Radio.*, 475 U.S. 574 at 586,106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 243, 255, 106 S. Ct. 2548, 91 L. Ed. 2d 202 (1986). "The non-moving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser*, 536 F. 3d 140,at145 (2d Cir. 2008).

## POINT I

### Plaintiff's Cause Of Action For Unlawful Stop Should Be Dismissed

"The Fourth Amendment prohibits arrest without probable cause, but allows a *Terry* stop, which permits police to stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulated fact that criminal activity may be afoot even if the officer lacks probable cause." *Lignon v. City of New York,* 925 F. Supp. 2d 478 at 489 (S.D.N.Y. 2013), *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). The federal courts in New York have recognized that a claim for unlawful stop is subsumed in a false arrest claim where both arise out of the same facts. See *Dixon v. City of Syracuse*, 493 F. Supp. 3d 30, 42 (N.D.N.Y. 2020) (held unlawful stop claim must be dismissed as duplicative of the false arrest claim). In *Lozada v. Weilminster*, 92 F. Supp. 3d 76, 98 (E.D.N.Y. 2015), this Court dismissed an unlawful seizure claim because it was duplicative of a false arrest claim. Similarly, In *Codero v. City of New York,* 282 F. Supp. 3d 549 (E.D.N.Y. 2017), this Court dismissed an unlawful stop claim because the Court found that "a 'sudden arrest' based upon alleged police observance of a crime being committed, occurred in this case, not a *Terry* stop or frisk." *Id* at 564. As the court noted in *Pinter v. City of New York*, 976 F. Supp. 2d 539 at 563 (S.D.N.Y. 2013), "although a *Terry* stop may ripen in an arrest, not every arrest flows from a *Terry* stop."

Here, the facts do not support a *Terry* stop, since Plaintiff's vehicle was stopped when Samuel approached and opened the vehicle door, and told Plaintiff to put the car in park and to step out because he was under arrest. Even if the facts could be construed as a *Terry s*top, Samuel's unrebutted testimony is that he had decided to arrest Plaintiff based on his having observed unlawful solicitation before he approached the vehicle. This was a sudden arrest rather than a *Terry* stop and that claim should be dismissed as subsumed in the claim for false arrest.

# POINT  II

## The Claim For Malicious Abuse Of Process Is Legally Deficient

"In New York, 'a malicious abuse-of-process claim lies against a defendant who 1) employs regularly issued legal process to compel performance or forbearance of some act, 2) with the intent to do harm without excuse of justification, 3) in order to obtain a collateral objective that is outside the legitimate ends of the process.' " *Savino v. City of New York*, 331 F. 3d 63 at 76 (2d Cir. 2003) quoting *Cook v. Sheldon*, 41 F. 3d 73 at 80 (2d Cir. 1994). Plaintiff's malicious abuse of process claim rests solely upon his arrest, which he alleges was to cover up the police defendants' assault upon him (Complaint ¶ 57). In *Savino*, the Second Circuit made it clear that the alleged malicious motive was insufficient to state an abuse of process claim, and that "a plaintiff must establish that defendants have an improper *purpose* in arresting plaintiff." *Savino, supra* at 77.  The court in *Savino* found that it was not enough for a plaintiff to allege that defendants were seeking to retaliate against him when they had him arrested and prosecuted. Instead, the Circuit Court wrote that a plaintiff must show that defendants " aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution." *Savino, supra* at 77.  Here, Plaintiff has failed to allege or show that defendants had a collateral purpose beyond his arrest and prosecution. Where, as here, a plaintiff fails to "collateral objective" in addition to arrest and prosecution that is outside the legal process, the claim should be dismissed on summary judgment, See *Coggins v. County of Nassau* 254 F. Supp. 3d 500, 519 (E.D.N.Y. 2017) (dismissing the abuse of process claim for failure to allege a collateral objective),  See also *Folk v. City of New York*, 243 F. Supp. 3d 363, 375 (E.D.N.Y.  2017) (dismissing the abuse of process claim for failure to allege a collateral purpose beyond or in addition to plaintiff's arrest and prosecution).

**POINT III**

**Plaintiff's Claim For Negligent Hiring, Training And Retention
Lacks The Requisite Factual Support**

To hold a municipality liable under § 1983 for failure to train, the plaintiff needs to show that such a "failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom …[untrained employees] come into contact.' " *Connick v. Thompson*, 563 U.S. 51 at 61, 131 S. Ct. 1350, 79 L. Ed. 2d 417 (2011), quoting *Canton v. Harris*, 489 U.S. 378 at 388, 109 S. Ct 1197, 103 L. Ed . 2d 417 (1989)). "A training program must be deficient in order for a deliberate standard to apply: the fact that a training is imperfect, or not the precise form plaintiffs would prefer is insufficient to make such a showing." *Reynolds v. Guiliani*, 506 F. 3d 183 at 193 (2d Cir. 2007). This same standard applies to a claim of negligent supervision. *Id.*

Plaintiff has not alleged or shown that defendants, Samuel or Telesford, had a history of engaging in excessive force, false arrests or falsifying evidence, or that the Port Authority training was constitutionally inadequate. Neither of these defendants has been sued previously and there is no record of CCIU complaints of excessive force or false arrest. The federal claim should be dismissed since it is nothing more than a recitation of the elements of the cause of action unsupported by any facts. See *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

To the extent plaintiff is asserting a claim for negligent hiring training and retention under New York State law, it must be dismissed against the Port Authority because such a claim can only "proceed against an employer for an employee acting outside the scope of [his or] her employment." *Rodriguez v. City of New York*, ___F. 3d ___, 16 civ 5861 (NG)

(RER), 2022 WL 900613 at *10 (E.D.N.Y. Mar. 28, 2022). Where, as here, there is no dispute

that Samuel and Telesford were acting within the scope of their employment, the Port Authority

can only be held liable for negligence under a theory of *respondeat superior.* See *Colodney v.*

*Continuum Health Partners, Inc*., No. 03 civ 7276 (DLC), 2004 WL 829158 at *8 (S.D.N.Y.

April 15, 2004). Here the allegations are that Samuel and Telesford engaged in intentional

conduct, which  is inconsistent with any claim for negligence under state law thereby defeating a

claim for negligence and *respondeat superior* liability.

## POINT IV

### Plaintiff's Claim For Intentional Infliction Of Emotional Distress Must Fail

" A claim for intentional infliction of emotional distress ("IIED") does not implicate a

federal right, rather it is a state law tort claim.  In New York. the tort of intentional infliction of

emotional distress has four elements:1) extreme and outrageous conduct 2) intent to cause severe

emotional distress 3) a causal connection between the conduct and the injury, and 4) severe

emotional distress*." Bender v. City of  New York*, 78 F. 3d 787, at 790 (2d Cir. 1996) (held that

the injury suffered from emotional tort is the same as the injury form false arrest and assault &

battery); See also *Howelll v. N.Y. Post*, 81 N.Y. 2d 115, 121, 596 N.Y.S. 2d 350,353, 612 N.E.

2d 699, 702 (1993).

The New York courts have long declined to allow a claim for IIED  to go forward where

it duplicates traditional tort claims such as false arrest and assault and battery. See *Leonard v.*

*Reinhardt,* 20 A.D. 3d 510, 799 N.Y.S. 2d 118 (2d Dept. 2005) (held the IIED claim should have

been dismissed as duplicative of the assault and battery claim);  *Matthaus v. Hadjedj* 148 A.D.3d

425, 49 N.Y. S.3d 393 (1st Dept. 2017) (held that IIED should be dismissed since it is

duplicative of the injury claimed for false arrest).  In *Rubio v. Country of Suffolk*, No. 01 civ 1806 (TCP), 2007 WL 2993830 at *5 (E.D.N.Y. Oct. 9, 2007), this Court dismissed the IIED claim because it was duplicative of a claim for false arrest and assault and battery. See also *Soliman v. City of New York*, No. 15 civ 5310 (PKC) (RER), 2017 WL 1229730 at *11 (E.D.N.Y. Mar. 31, 2017) ("The case law of New York makes clear that IIED 'is a theory of recovery that is invoked only as a last resort.' " quoting *McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc.*, 256 A.D. 2d 269,271, 682 N.Y.S. 2d, 167,169 (1st Dept. 1998)). Here, Plaintiff's IIED claims should be dismissed as duplicative of his claims for false arrest, assault and battery and denial of a right to a fair trial.

Plaintiff's IIED claim must be dismissed against the Port Authority since it is well recognized that it against public policy for an IIED claim to be allowed against a government agency. See *Doe v. City of New York* , No. 18 civ 670 (ARR) (JO), 2018 WL 3824133 (E.D.N.Y. Aug. 9, 2018); *Eckardt v. City of White Plains*, 87 A.D. 3d 1049, 930 N.Y.S. 2d 22 (2d Dept. 2011).

## POINT V

### Plaintiff's Claim For Negligent Infliction Of Emotional Distress
### Should Be Dismissed

Negligent infliction of emotional distress ("NIED") is a state common law tort that "has its roots in the acknowledgment by the courts of the need to provide relief in those circumstances *where traditional* theories of recovery do no act.' "*Lee v. McCue*, 410 F. Supp. 2d 221 at 227 (S.D.N.Y. 2006) quoting *Sheila C v. Povich*, 11 A.D. 3d 120 at 130, 781 N.Y.S.2d 342, at 351 (1st Dept. 2004). "Such a claim must be premised on a breach of a duty owed to plaintiff which either unreasonably endangers the plaintiff's physical safety or causes the plaintiff to fear for his

or her physical safety." *Id.* Plaintiff has alleged no facts to support a claim that defendants owed him a duty distinct from his false arrest and assault and battery claims. See *Daluise v. Sottile*, 40 A.D. 3d 801,803, 837 N.Y.S. 2d 175 (2d Dept. 2007).

Furthermore, a claim of NIED is irreconcilable with Plaintiff's claims of false arrest, assault and battery and falsification of evidence. See *Universal Calvary Church v. City of New York*, No. 96 civ 4606 (RPP), 2000 WL 1745048 at *a2 (S.D.N.Y. Nov. 28, 2000); *Barreto v. Kotaj*, 46 Misc. 3d 47,48, 1 N.Y.S. 3d 727 Sup. Ct.(App. Term, 1st Dept. 2014).

This claim should be dismissed as duplicative of plaintiff's claims for false arrest, assault and battery and falsifying evidence. See *CT v. Valley Stream Union Free School District*, 201 F. Supp. 3d 307,327 (E.D.N.Y. 2016).

In addition, a claim for NIED cannot be made against a government agency. See *Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 299-300 (S.D.N..Y. 2015).

## POINT VI

### Plaintiff's Claim Of Failure To Intervene Cannot Be Maintained
### Against Samuel and His Claim of False Arrest Cannot Be Maintained Against Telesford

"A law enforcement officer has an affirmative duty to intercede on behalf of a citizen whose constitutional rights are being violated in his presence by other officers." *O'Neill v. Krzeminski*, 839 F. 2d 9, 11 (2d Cir. 1988). However, where an officer is alleged to be a participant in a constitutional violation and can be held liable "under a theory of direct participation" the officer cannot be 'held liable" on a claim of "failure to intervene." *Jackson v. City of New York*, 939 F. Supp. 2d 219 at 232 (E.D.N.Y. 2013). See also *Chepilko v. City of New York*, No. 06 civ 5491 (ARR) (LB), 2012 WL 398700 at *8 n.5 (E.D.N.Y. Feb. 6, 2012). Here, it

is undisputed that Samuel was the arresting officer and Plaintiff has asserted a false arrest claim against him.  The claim for failure to intervene must therefore be dismissed.

Telesford cannot, by the same reasoning, be sued for false arrest and failure to intervene. See *Theodat v. City of New York*, 818 Fed. Appx. 79 (2d Cir. 2020).  The false arrest claim against Telesford must be dismissed.

## POINT VII

### Plaintiff's *Monell* Claim Lacks Any Evidentiary Support

It is well established that a § 1983 claim against a municipality must result from a policy, custom, pattern or practice of permitting arrests without probable cause, using excessive force or falsifying evidence.  (1) See *Monell v. Department of Social Services*, 436 U.S. 658,694-695, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978); *Lee v. McCue*, 410 F. Supp. 2d 221,227 (S.D.N.Y. 2006). The behavior must be so persistent and widespread and "so manifest as to imply the constructive acquiescence of senior policy [] making officials." *Sorlucco v. City of New York Police Dept.*, 971 F. 2d 864 at 871 (2d Cir 1992).  Alternatively, liability can be found where there is a persistent failure to discipline subordinates who violate civil rights. See *Batista v. Rodriguez,* 702 F. 2d 393, 397 (2d Cir. 1983). However, as previously discussed, "the 'deliberate indifference test' is a stringent standard of fault requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Dixon v. City of Syracuse*, 493 F. Supp. 3d 30, at  37-38 (N.D.N.Y. 2020) quoting *Hulett v. City of Syracuse*, 253 F. Supp. 3d 462 (N.D.N.Y. 2017).

Here, there is no showing of a policy, custom or practice by the Port Authority.  Nor is there any evidence of failure to train or supervise since both officers have an unblemished

record.  To the extent Plaintiff is asserting *Monell c*laims against the Port Authority, based on those claims for false arrest, excessive force, abuse of process and denial of the right to a fair trial, those claims should be dismissed. [1]


## POINT VIII

### The State Law Claims For Intentional Torts Against
### Telesford Are Time -Barred


The state law claims for false arrest, assault and battery, abuse of process and IIED have a one year statute of limitations, CPLR 215 (3).  *Tchatat v.* City *of New York*, No. 14 civ 2385 (LGS) , 2015 WL 5091197 at 13-15 (S.D.N.Y. 2015).  Since Telesford was not named as a defendant until December 2020, the claims arising out of plaintiff's arrest on August 6, 2018 are barred by the statute of limitations.

## POINT IX

### The Claim Against The Port Authority Police Department Does Not Lie

This Court has previously recognized that the New York City Police Department  is an agency of the City of New York and therefore cannot be sued. See *Soliman v. City of New York* ,

---

[1] Defendants do not address a claim for malicious prosecution since it has not been alleged in either the original complaint or the second amended complaint. Although referenced in Plaintiff's letter of April 4, 2022, Plaintiff has not as of the filing of this motion filed a motion to amend the complaint a third time to add this claim.  Defendants would oppose such a motion were it to be made.

15 civ 5310 (PKG) (RER), 2017 WL 1229730 at *13 (E.D.N.Y. March 31, 2017). Here, the

PAPD is a department within the Port Authority and should similarly be deemed not to be

suable. See N.Y. Unconsol. Laws. § 1645, § 6401 *et seq.*


### CONCLUSION

The motion for partial summary judgment should in all respects be granted.

Dated: New York, New York
     July 26, 2022

                                      Respectfully submitted,


                                      By/s/ Kathleen Gill Miller
                                        Kathleen Gill Miller
                                        Christopher Valletta

                                      The Port Authority Law Department
                                      Attorneys for Defendants
                                      4 World Trade Center, 150 Greenwich
                                      Street, 24 Floor
                                      New York, NY  10007
                                      (212) 435-3434; (212) 435-3493


TO:    Elefterakis, Elefterakis & Panek
        Gabriel P. Harvis, Esq. (gharvis@elefterakislaw.com)
        Baree Fett. Esq.(bfett@elefterakislaw.com)
        80 Pine Street, 38th Floor
        New York, New York 10005
        Via email
        gharvis@elefterakislaw.com
        bfett@elefterakislaw.com