UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------- x

FRANCISCO SURIEL,

Plaintiff,

-against-

PORT AUTHORITY OF NEW YORK AND NEW JERSEY; Police Officer ANDREW SAMUEL, Shield No. 3331; POLICE OFFICER BRETT TELESFORD,

Defendants.

---------------------------------------------------- x

MEMORANDUM & ORDER

19-CV-3867 (ENV) (ST)

VITALIANO, D.J.

From the opening gun, defendants have incessantly sought a way to use a surveillance video of plaintiff Francisco Suriel captured years after he sustained his alleged injuries and following his return to work as a licensed for-hire transport driver. The video was promptly turned over to plaintiff now more than two years ago. Defendants have attempted to cabin their proffer within the Court's *in limine* ruling holding that the video might be used for a proper "impeachment" purpose. In their initial foray, an attempt to use the surveillance video to impeach the testimony of Suriel himself, they fell short of the mark. They now seek to pounce on the testimony of Dr. George DiGiacinto, a neurosurgeon called as an expert by plaintiff, to impeach his medical opinion as to the severity, duration, and limiting effects of the injuries plaintiff claims were inflicted upon him by defendants.

Surveillance video, of course, can be used in appropriate circumstances to impeach other evidence admitted at trial. *See, e.g., Rodriguez v. United States,* No. 23-CV-5948*,* 2026 WL 1971325, at *7 n.7 (E.D.N.Y. July 8, 2026). With Dr. DiGiacinto's testimony providing a fresh opportunity, defendants renewed their quest to use the surveillance video. The Court granted them

an opportunity to examine Dr. DiGiacinto and attempt to shoehorn the surveillance video within "appropriate circumstances" justifying its use for impeachment purposes. In their examination, defendants posed hypotheticals that mirrored the images on the surveillance video and secured somewhat waffling responses from Dr. DiGiacinto, who posited that the hypotheticals might affect his opinion to some degree. *See* Trial Tr. 793:1-794:17, October 13, 2026. The Court reserved decision and excused Dr. DiGiacinto from the stand, instructing him that he was subject to recall by the Court. The trial continued on to other areas and the parties continued to supplement their arguments on the issue reserved for decision.

In the end, the Achilles heel in defendants' argument to use the surveillance video to impeach Dr. DiGiacinto's expert opinion is the same as what prompted the Court to deny defendants' application to use the surveillance video to impeach plaintiff's testimony. This is not the traditional case where the injured party claims that he could not perform certain activities and, lo and behold, out comes the surveillance video showing the plaintiff performing the very activities he claimed on the stand he could not perform. Impeachment! *See Rodriguez*, 2026 WL 1971325, at *7 n.7. Here, there is no activity depicted on the proffered surveillance video that plaintiff said he could not perform. His claim was that when he returned to work, he could perform the activities he used to perform, but there would often be pain. *See* Trial Tr. 210:1-24, October 7, 2026; *see* Trial Tr. 89:5-90:13, October 6, 2026. The surveillance video does not impeach that testimony; nor does it impeach the opinion of Dr. DiGiacinto that is derivative from it. *See U.S. v. Trzaska*, 111 F.3d 1019, 1024-25 (2d Cir. 1997) (holding that evidence must be "inconsistent" for impeachment purposes, defined as "any variance between the [evidence] that has a *reasonable bearing on credibility*") (citation omitted). And, as the Court made clear from its *in limine* rulings, the surveillance video would be precluded unless used for impeachment purposes. *See* Order, Dkt.

160. There being no proper impeachment purposes, it is precluded.

It begs the question: Why would defendants seek to use the video at all if it arguably bolsters the testimony of plaintiff? The answer, presumably, is that the real purpose of the video is not to show objective evidence of conduct inconsistent with the claim, but to argue something that is purely speculative—that is, the objective conduct depicted was performed without the pain plaintiff claimed. That invitation to speculate is highly prejudicial and, therefore, even if the surveillance video was otherwise probative and appropriate impeachment evidence, this unmistakable invitation to speculate as to the level of plaintiff's pain would run afoul of Rule 403. *See* Fed. R. Evid. 403 ("The Court may exclude relevant evidence if its probative value is substantially outweighed by a danger of… unfair prejudice"); *see U.S. v. Abel*, 469 U.S. 45, 54, 105 S.Ct. 465, 470, 83 L.Ed. 2d 450 (1984) ("A district court is accorded wide discretion in determining the admissibility of evidence under the Federal Rules," including Rule 403).

Though the surveillance video is not one of them, there are other arrows in defendants' impeachment quiver. Defendants are free to confront Dr. DiGiacinto with plaintiff's trial testimony as to his ability to perform his past work activities. There are also records from the Taxi and Limousine Commission showing that plaintiff logged more trips in comparable time periods after his return to work than he did before his claimed injury. *See* Trial Tr. 185: 7-22, 186:4-15, October 7, 2026. There may be other such evidence beyond that which is surfaced so far at trial. Dr. DiGiacinto is subject to recall and, if defendants request, the Court will order him recalled and their cross-examination of him may continue. If defendants do wish to avail themselves of that opportunity, they are directed to advise the Court by the close of business on Friday, October 16, 2026. Their application to use the surveillance video to impeach Dr. DiGiacinto's testimony and opinion, however, is denied.

So Ordered.

Dated: Brooklyn, New York

October 15, 2026

/ s / Eric N. Vitaliano

ERIC N. VITALIANO

United States District Judge